**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ESPECIAS MONTERO, INC.<br><br>Plaintiff/Counter Defendant<br><br>v.<br><br>BEST SEASONING GROUP, INC. D/B/A SOFRITO MONTERO<br><br>Defendant/Counter Plaintiff | Civil No. 20-1740 (GLS) |

**OPINION AND ORDER**

Plaintiff Especias Montero, Inc. ("Especias") and Defendant Best Seasonings Group, Inc. ("Best Seasonings") are local competitors that produce, sell, and distribute spices and seasonings, among other products. Especias registered the mark ESPECIAS MONTERO DESDE 1959 in the U.S. Patent and Trademark Office ("USPTO"). Especias claims that Best Seasonings is infringing its trademark and filed this action seeking a preliminary and permanent injunction, as well as damages, for trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Puerto Rico Trademark Act, 10 P.R. Laws Ann. § 223 et seq., and for unfair competition and unjust enrichment under Article 26 of the Puerto Rico Civil Code. Docket Nos. 1 and 6. Best Seasonings filed a counterclaim in the alternative seeking a declaration that the purportedly infringing mark (ESPECIAS NATURALES BY SOFRITO MONTERO) was in use prior to Especias' first use in commerce of ESPECIAS MONTERO DESDE 1959 and its subsequent registration in the USPTO. Docket No. 32. Especias' damages claims were dismissed by stipulation. Docket Nos. 52 and 54. Pending before the Court is Best Seasonings' request for summary judgment on the claims for equitable relief. Docket No. 74. For the reasons discussed below, Best Seasonings' motion for summary judgment is **GRANTED**.

**I.  Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is warranted when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is considered genuine if "a reasonable jury, drawing favorable inferences, could resolve it in favor of the

nonmoving party." Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 270 (1st Cir. 2014)(citation omitted). A fact is "material" if it potentially affects the outcome of the suit. American Steel Erectors, Inc. v. Local Union No. 7, 536 F.3d 68, 75 (1st Cir. 2008). However, "[c]onclusory allegations, improbable inferences, and unsupported speculation are insufficient to establish a genuine dispute of fact." Velázquez-Pérez, 753 F.3d at 270 (citations omitted).

A party moving for summary judgment bears the burden of proving that there are no genuine issues of material fact and that judgment as a matter of law is warranted. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). The moving party "may affirmatively produce evidence that negates an essential element of the non-moving party's claim" or "point to evidentiary materials already on file […] that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317)). "[I]f the summary judgment record satisfactorily demonstrates that the plaintiff's case is, and may be expected to remain, deficient in vital evidentiary support, this may suffice to show that the movant has met its initial burden." Carmona, 215 F.3d at 133; Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015).

Even though infringement cases "often present factual issues that render summary judgement inappropriate, this is not invariably so." Copy Cop, Inc. v. Task Printing, Inc., 908 F.Supp. 37, 43 (1st Cir.1995)(citing Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1989); Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 814 (1st Cir.1987)). In some infringement cases, "the Court may determine that the facts have been fully developed through pleadings, affidavits, documents and exhibits and that the legal issues are squarely presented." Pignons S. A. de Mecanique de Precision Corp. v. Polaroid Corp., 498 F.Supp. 805, 809-810 (D. Mass. 1980), aff'd 657 F.2d 482, 487 (1st Cir. 1981).

Pursuant to Local Rule 56 of the Local Rules of the District Court for the District of Puerto Rico, a party opposing a motion for summary judgment must submit a statement admitting, denying or qualifying each of the facts set forth by the moving party in its statement of uncontested facts in support of the motion for summary judgment. This is accomplished by making individual reference to each numbered paragraph of the moving party's statement of uncontested facts. Local Rule 56 (c) and (e). The purpose of Local Rule 56 is to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute". CMI Capital Mkt. Inv., LLC v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). Local

Rule 56 admonishes that the facts that are not specifically denied, qualified or otherwise properly controverted by the non-moving party are deemed admitted by the Court. Local Rule 56 (c) and (e). The First Circuit has "held with a regularity bordering on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril." Puerto Rico Am. Ins. Co. v. Rivera Vázquez, 603 F.3d 125, 131 (1st Cir 2010).

Best Seasonings submitted a Statement of Uncontested Material Facts at Docket No. 72 ("SUF"). Especias submitted its own statement of facts in Docket No. 84 ("PSUF"). Especias' statement does not reference by numbered paragraphs the facts proposed by Best Seasonings; it merely includes a list of its own proposed facts. This is exactly what is proscribed in Local Rule 56(c). Especias did not "admit, deny or qualify the uncontested facts proposed by the moving party.". **Therefore, the materials facts proposed by Best Seasonings in Docket No. 72, which have been properly supported by evidence on the record, are deemed admitted**. See Mariani-Colón v. Dept of Homeland Security, 511 F.3d 216, 219 (1st Cir. 2007) ("[S]ubmitting an 'alternate statement of facts' [..] justifies the issuance of a "deeming order" which characterizes defendant's assertions of fact as uncontested") (emphasis ours).

## II. Uncontested Facts

Having reviewed the submissions by both sides, the Court finds that the following material facts are not in dispute:

1. In 1959, Especias was founded by Efraín Montero Acobes and Julia Ruiz Colón. Docket No. 84, PSUF ¶ 1.

2. Especias operates as a family business dedicated to the production, sale and distribution of spices, spice extracts and seasonings. PSUF ¶ 11.

3. Especias' principal place of business is in Ponce, in the southern part of Puerto Rico. PSUF ¶ 22.

4. Especias has used the words ESPECIAS and MONTERO (as ESPECIAS MONTERO) in its bottles and marketing since 1959. PSUF ¶ 2.

5. Especias sells and distributes its products to more than two hundred (200) supermarkets, independent grocers, and wholesalers in the Puerto Rico market. Especias also sells its products through Brands of Puerto Rico, an e-commerce platform. PSUF ¶¶ 4, 7.

Especias Montero, Inc. v. Best Seasonings Group, Inc.
Civil No. 20-1740 (GLS)

6. When Efraín Montero Acobes passed away in 1987, his son Efraín Montero Ruiz ("Montero Ruiz"), served as president of Especias until 1989. PSUF ¶¶ 13-14, 16. Especias' current president is Montero Ruiz' brother, Pedro Montero Ruiz. PSUF ¶24.

7. Montero Ruiz founded Sofrito Montero. PSUF ¶ 17.

8. In 2011, Montero Ruiz' son, Efraín Montero Arroyo ("Montero Arroyo"), incorporated Best Seasonings d/b/a/ Sofrito Montero, and currently serves as its president. Docket No. 72, SUF ¶¶ 6, 7, 8; Docket 72-1, "Registry of Corporations and Entities".

9. Best Seasonings operates as a family business dedicated to the sale of sofrito, spices, seasonings, adobo, and other products. PSUF ¶ 12.

10. Best Seasonings' principal place of business is in Juana Díaz, in the southern part of Puerto Rico. PSUF ¶22.

11. Best Seasonings produces, sells, and distributes spices and seasoning products under the brands SOFRITO MONTERO, MONTERO and ESPECIAS NATURALES BY SOFRITO MONTERO. SUF ¶ 11.

12. Best Seasonings sells its products in supermarkets, pharmacies, restaurants, wholesalers and through its website www.sofritomontero.com. PSUF ¶¶ 6, 8; Docket No. 91 at ¶ 6.

13. Best Seasonings promotes its products through social media accounts on Facebook, Instagram, and YouTube, and through its own website. PSUF ¶ 9. Best Seasonings also promotes its products on retail points of sale. PSUF ¶ 41.

14. In 2017, Especias rebranded its products and marketing strategies, using the following mark developed by Mabel Pola Montero (PSUF ¶ 31):



15. Other market participants that sell spices under marks such as Goya and Badía also use green leaves as part of the design of their marks in the package for spices. SUF ¶ 54.

16. In 2017, Especias opened a Facebook account and an Instagram page and relaunched its website containing its mark. PSUF ¶¶ 10, 33.

17. In June 2017, Especias filed for registration of its mark in the USPTO. PSUF ¶ 34.

4

Especias Montero, Inc. v. Best Seasonings Group, Inc.
Civil No. 20-1740 (GLS)

18. Per the USPTO's Office Action of December 10, 2017, the term "especias" translates to the generic term "spices". Docket 72-4, USPTO Office Action, 12/10/17.

19. In June 2018, Especias launched its branding and marketing campaign using the mark in the press, social media and in the marketplace. PSUF ¶¶ 38; 41.

20. Best Seasonings promotes one of its products as ESPECIAS NATURALES BY SOFRITO MONTERO. PSUF ¶ 42. The design of this product's label includes a cook's hat, leaves and white or brown letters (PSUF ¶¶ 42, 44):



21. On August 7, 2018, the USPTO registered the mark ESPECIAS MONTERO DESDE 1959. Docket No. 72-5, USPTO Certificate of Registration. The certificate of registration provides that "[n]o claim is made to the exclusive right to use the following apart from the mark as shown: 'ESPECIAS' and 'DESDE 1959'". Id.; SUF ¶ 24.

22. In September 2020, Walmart Puerto Rico, Inc. launched a digital advertisement titled "Walmart Puerto Rico committed to the local businessperson" which sought to illustrate the company's commitment to business relationships with Puerto Rico businesses and entrepreneurs. SUF ¶¶ 57, 59; Docket No. 72-14 ("Walmart Ad").

23. Montero Arroyo was invited to appear in the Walmart Ad. SUF ¶ 70.

24. Several products sold at Walmart appear in the Walmart Ad. SUF ¶ 64; Docket No. 72-14.

25. The spice products shown in the Walmart Ad include products sold under the Don Goyo, Badía, Bohío and Great Value marks. SUF ¶¶ 64-65.

26. A product sold by Especias ("canela molida") was shown in the Walmart Ad while Montero Arroyo was featured talking. Docket No. 72-14 (minutes 0:57 to 1:03).

27. After the Walmart Ad was published, Montero Arroyo sent the following text message to Walmart's marketing executive: "… I think we should eliminate the shots with Especias Montero [spices] to avoid conflicts…we are separate corporations". PSUF ¶¶ 53-54; Docket 84-14, Text message from Montero Arroyo.

28. Especias received messages on its Facebook account and via WhatsApp inquiring about products sold by Best Seasonings. PSFU ¶ 47.

### III.     Discussion

**A.     Trademark Infringement Claim under the Lanham Act**

Section 43(a) of the Lanham Act establishes a cause of action for trademark infringement. 15 U.S.C. §1125(a). "To succeed on a claim of trademark infringement, a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." Boston Duck Tours, LP v. Super Duck Tours, 531 F.3d 1, 12 (1st Cir. 2008)(citing Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2016)). If a mark is registered in the USPTO, the first prong of the trademark infringement cause of action— entitlement to trademark protection— is met. Niagara Bottling, LLC v. CC1 Ltd. P'ship, 381 F.Supp.3d 175, 183 (D.P.R. 2019). Under First Circuit case law, likelihood of confusion requires "more than the theoretical possibility of confusion." Boston Duck Tours, 531 F.3d at 12 (citing Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir.1996)). That is, "the allegedly infringing conduct must create 'a likelihood of confounding an *appreciable number of reasonably prudent purchasers* exercising ordinary care." Id. (citing Int'l Assn of Machinists, 103 F.3d at 201) (emphasis in the original). Demonstrating a likelihood of confusion is essential for a plaintiff to demonstrate a plausible claim for relief. Pignons S. A. de Mecanique de Precision Corp. v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981).

Pursuant to Pignons S. A. de Mecanique de Precision Corp. v. Polaroid Corp., the First Circuit evaluates eight factors to determine whether there is a likelihood of confusion between two marks: (1) the similarity of the marks; (2) the similarity of goods or services; (3) the relationship between the parties' channel of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective buyers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of the plaintiff's mark. Id. at 487. At summary judgment stage, these foregoing factors are evaluated in the light most favorable to the party claiming infringement. The Court must determine "on the whole" whether there is any genuine issue as to likelihood of confusion; no one factor is determinative, and each must be considered. Astra Pharmaceutical Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983) (citing Pignons, 657 F.2d at 487-492). These factors serve as a guide, not a mechanistic formula. Dorpan, S.L. v. Hotel Melia, Inc., 728 F.3d 55, 66 (1st Cir. 2013).

Especias takes issue with Best Seasonings' use of certain words and elements of the design of its mark ESPECIAS MONTERO DESDE 1959. Especias claims that Best Seasonings is infringing its trademark by using the words ESPECIAS and MONTERO in its product labeled ESPECIAS NATURALES BY SOFRITO MONTERO. And that Best Seasonings is infringing the design of its mark by using the name MONTERO, along with a design which consists of green leaves, the color brown, and a chef's hat. The Court applies the Pignons factors resolving any factual disputes in favor of Especias.

**1. Similarity of the marks and designs**

The similarity of marks inquiry is the most important factor in the Pignons analysis when the parties are direct competitors. Boston Duck Tours, 531 F.3d at 26. "The degree of similarity between two marks […] is determined by analyzing their sight, sound, and meaning." Id. at 24 (citing Volkswagenwerk, 814 F.2d at 817). However, when a mark is a composite, as the mark at issue here (ESPECIAS MONTERO DESDE 1959)[1], the Court must test "its validity and distinctiveness by looking at it as a whole, rather than dissecting it into its component parts." 2McCarthy on Trademarks and Unfair Competition (5th ed.) § 11:27 (citations omitted). This is called the anti-dissection rule. Id. Nonetheless, when evaluating a composite mark, the Court affords less weight to those portions of a mark that are generic. Boston Duck Tours, 531 F.3d at 24 (citing 4McCarthy § 23:49): "if a common portion of the two conflicting marks is a public domain generic name, the emphasis of enquiry should be upon the confusing similarity of the non-generic portion, with the ultimate issue determined by the confusing similarity of the total impression of both marks"). In its analysis of the total impression of the marks, the Court thus focuses on the non-generic portions of each mark. Boston Duck Tours, 531 F.3d at 24 (citing Am. Cyanamid Corp. v. Connaught Labs., Inc., 800 F.2d 306, 309 (2nd Cir. 1986); Beacon Mutual Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8,18-19 (1st Cir. 2004)).

The Court must determine what portion, if any, of ESPECIAS MONTERO DESDE 1959 is generic. "A generic term is one that does not distinguish the goods of one producer from the goods of others […] it refer[s] to the genus of which the particular product is a species." Colt

---

[1] "If the parts of a mark are so merged together that they cannot be regarded as separate elements, then the mark is a single unitary mark, not a composite." 3 McCarthy § 19:66. The parts of ESPECIAS MONTERO DESDE 1959 can be examined separately, as done by the USPTO. The Court thus deems that ESPECIAS MONTERO DESDE 1959 is a composite; not a single unitary mark.

Defense, 486 F.3d at 705 (citing Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 373-374 (1st Cir 1980)). A term is considered generic when it identifies the nature of the good, rather than its source. Id. (citations omitted). However, generic terms combined may result in a non-generic composite mark, if "[t]he whole composite create[s] a distinct commercial impression that is more than just the sum of its parts." 2McCarthy § 12:39 (citing Princeton Vanguard, LLC v. Frito-Lay North America, Inc., 786 F.3d 960, 967 (Fed. Cir. 2015)). "The general rule is that genericness of a composite mark is determined by examining the composite as a whole rather than examining its constituent parts individually." 2McCarthy § 12:39 (citations omitted).

"Generic terms, being the least distinctive, receive no trademark protection." Colt Defense, 486 F.3d at 705 (citations omitted). When a mark has been registered in the USPTO, it is presumed non-generic. 15 U.S.C. § 1115(a). However, this presumption is rebuttable if the alleged infringer demonstrates, by a preponderance of the evidence, that the mark is generic. Colt Defense, 486 F.3d at 705-706; Borinquen Biscuit, 443 F.3d at 117-118. Once the presumption is rebutted, "the party holding the certificate of registration may not avoid summary judgment simply by pointing to the certificate as evidence." Colt Defense, 486 F.3d at 708 (citations omitted). ESPECIAS MONTERO DESDE 1959 is a registered mark; it is presumed that it is not generic. Notwithstanding the presumption, Best Seasonings argues that portions of the ESPECIAS MONTERO DESDE 1959 mark are generic; namely, the word ESPECIAS and the surname MONTERO.

Best Seasonings argues that the word ESPECIAS in the ESPECIAS MONTERO DESDE 1959 mark is generic because it merely identifies the nature of the good; a spice. And that Especias admitted as such when it sought to disclaim the exclusive use of the word ESPECIAS apart from the mark when it sought registration in the USPTO. Docket No. 74, pp. 21-22. To evaluate genericness, evidence of the relevant public's understanding of the term may be obtained from consumer surveys, media publications, use of competitors in the industry, testimony from purchasers and the **plaintiff's own use**. Colt Defense, 486 F.3d at 706 (citations omitted); Boston Duck Tours, 531 F.3d at 18 (emphasis provided). Indeed, when the party claiming infringement uses the term to describe the product in a generic manner, this suggests that the term is generic. Colt Defense, 486 F.3d at 707 (citing Pilates, Inc. v. Current Concepts, Inc., 120 F.Supp.2d 286, 299 (S.D.N.Y. 2000)). The Court agrees with Best Seasonings that the word ESPECIAS in ESPECIAS MONTERO DESDE 1959 is a generic portion of the mark. Especias uses the word

"spices" to describe its products (see e.g., PSUF ¶ 11: Especias Montero has always operated as a family business, dedicated to the production, sale and distribution of *spices*, *spice* extracts and seasonings). Its decision to disclaim the use of the word "spices" apart from the mark (SUF ¶ 24) also provides support for this conclusion.

Best Seasonings argues that MONTERO is a surname (PSUF ¶¶ 23-24) over which Especias cannot claim exclusivity. Surnames used as trademarks are inherently indistinctive or weak. R.J. Toomey Co. v. Toomey, 683 F. Supp. 873, 878–79 (D. Mass. 1988). "Surnames are permitted trademark protection only upon a showing that they have become strong marks by acquiring distinctiveness through secondary meaning." 2McCarthy § 13:31 (citations omitted). Secondary meaning may be proven through direct evidence such as consumer surveys and individual consumers' testimonies. Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 43 (1st Cir. 2001). To determine whether a surname has acquired secondary meaning, the First Circuit has considered the following factors: (1) length and manner of use; (2) nature and extent of advertising and promotion of the mark; and (3) efforts made to create a conscious connection in the consumer's mind between the name and the product. Boston Beer Co. v. Slesar Bros. Brewing Co., 9 F.3d 175, 180 (1st Cir.1993) (quoting Volkswagenwerk, 814 F.2d at 816; Tonawanda St. Corp. v. Fay's Drug Co., 842 F.2d 643, 648 (2nd Cir.1988) (advertising expenditures, consumer surveys, media coverage, attempts to copy the mark, and length and exclusivity of use are considered to attribute secondary meaning)). What matters is the mindset of the likely consumers not a party's self-serving opinion. Flynn v. AK Peters, Ltd., 377 F.3d 13, 21 (1st Cir. 2004). Limited anecdotal evidence is insufficient to establish secondary meaning. Id. There is no dispute that MONTERO is the surname of the founders of Especias and Best Seasonings. Especias has not submitted any evidence of secondary meaning. The Court must thus conclude that MONTERO has not acquired secondary meaning and is an inherently weak portion of ESPECIAS MONTERO DESDE 1959.

Having concluded that the word ESPECIAS is generic and that the word MONTERO has not acquired a secondary meaning, the Court evaluates the total impression of the two marks without comparing their individual features and affording less weight to generic terms. Both marks use the word ESPECIAS. We look at both marks without the word ESPECIAS: MONTERO DESDE 1959 and NATURALES BY SOFRITO MONTERO. When compared as a whole, the composite terms are somewhat similar because the surname MONTERO is included in both;

however, they are sufficiently dissimilar. The phrases look and sound different, have different meanings and communicate different things. MONTERO DESDE 1959 communicates the year since the family name has been used in a particular context. NATURALES BY SOFRITO MONTERO emphasizes the natural aspect of the spice and its source. ESPECIAS MONTERO DESDE 1959 viewed does not create a distinct commercial impression. When compared in sight, sound and meaning with ESPECIAS NATURALES BY SOFRITO MONTERO, the marks are sufficiently dissimilar.

Especias also claims that the design of Best Seasonings' mark is confusingly like the Especias' mark. Specifically, that Best Seasonings promotes its products using typography and colors which incorporate elements of the Especias mark: the image of green leaves, the color brown in the word NATURALES, the chef's hat with leaves, and the word MONTERO. "As with word marks, when comparing design marks 'similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features.'" Pignons, 657 F.2d at 487 (quoting Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 444 (9th Cir.1980); 4McCarthy § 23:25 ("Obviously, for picture and design marks (as opposed to word marks), similarity of appearance is controlling.")). Logos must be viewed "sequentially as if one were in the context of the marketplace rather than in a side-by-side comparison." Boston Duck Tours, 531 F.3d at 24. Even when there could be an overlap in the elements of the marks, the marks may be deemed sufficiently dissimilar if the similarities are limited to generic or descriptive elements. Boston Duck Tours, 531 F.3d at 29 (citations omitted).

Especias relies on the testimony of Pola Montero, the person in charge of Especias' rebranding and marketing, to conclude that the color schemes, typography, and the cook's hat are similar in both designs, and that there are similarities in the social media marketing used by both parties. PSUF ¶¶ 48, 58. But Pola Montero is not an expert witness. Rule 701 of the Federal Rules of Evidence allows a lay witness to testify as to an opinion that is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [expert witness testimony]." Fed. R. Evid. 701; see e.g., Tyco Healthcare Grp. LP v. Kimberly-Clark Corp., 463 F. Supp. 2d 127, 131 (D. Mass. 2006). However, the issue before the Court is not Pola Montero's opinion as to the purported trademark infringement. The issue is *consumer perception* as to similarities between the designs of the two

marks. Yeti Coolers, LLC v. RTIC Coolers, LLC, 2017 WL 404553, at *2 (W.D. Tex. Jan. 27, 2017). And "[t]he only way to gauge this is by gathering information from the general consuming public in a scientific way that allows one to make reasonable conclusions regarding consumers' thoughts about a product." Id. (lay testimony not based on reliable data is irrelevant). Pola Montero's opinion as to similarities in color schemes, typography, elements of the marks, and social media marketing, is not in any way based on information gathered in a scientific manner. A fact finder could not draw a reasonable conclusion as to the perception of consumers regarding the similarities between designs and the products sold by Especias and Best Seasonings based on that testimony alone.

And even though some elements of the logos overlap, the similarities are limited to generic or descriptive terms. An image or a picture that merely serves to represent the good itself is merely descriptive of the good. 1McCarthy §§7:36-7:37. For instance, a picture of a grape leaf on a bottle of wine is not protected because many wine bottlers use the image of grape leaves to decorate their bottles and the image has "lost the power to differentiate brands." Id. (citing Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1048 (9th Cir. 1998)). The logic is simple: "[a] pictorial representation on a label may be so commonplace as to be incapable of creating a separate commercial impression in a buyer's mind." Id. (citing In re Rod's Food Products, Inc., 125 U.S.P.Q. 495 (T.T.A.B. 1960)). This is also the case of a picture of a chef and a salad bowl on a salad dressing label or of a picture of food on a container for that food. Id; citing Burger Chef Systems, Inc. v. Sandwich Chef, Inc., 608 F.2d 875, 203 U.S.P.Q. 733 (C.C.P.A. 1979) (no confusion likely between pictures of chef's head); Southern California Fish Co. v. White Star Canning Co., 45 Cal. App. 42, 187 P. 981 (1920) (picture of fish on tuna can).

As it pertains here, the image of a green leaf and a cook's hat is highly descriptive of the goods: spices for cooking. These images have "weak source-identifying attributes." Boston Duck Tours, 531 F.3d at 28-29 (citing Lawrence v. P.E. Sharpless Co. 203 F.762 (E.Pa.1913) (finding the image of a cow descriptive for dairy products); In re Eight Ball, Inc., 217 U.S.P.Q. 1183 (T.T.A.B.1983) (finding the picture of an eight ball and a pool cue merely descriptive of billiard parlor services)). Especias has not provided evidence of secondary meaning of the images in its design logo. Neither has Especias provided any evidence to create a triable issue as to the distinctiveness of the colors used in its design or as to any secondary meaning that attaches to the use of the colors in its mark. Like images, a color may be generic if it is "so common within a

market segment that consumers would likely associate it with that type of goods or services and not with just one source." 1McCarthy § 7:52. A single color of a product or service "can never be inherently distinctive and can only be registered or protected on a showing of secondary meaning." 2McCarthy §15:1 (citations omitted). It is also undisputed that other market participants that sell spices (Goya and Badía) also use green leaves as part of the design that accompanies their marks in the package for these types of products. SUF ¶ 54. The images of leaves merely describe the product itself— spices— rather than the specific provider. And, like leaves, a cook's hat is also common in the food industry. The similarities in both designs are centered around generic features. Especias has not put forth any evidence of secondary meaning for the images at issue.

The visual differences between the two logos at issue also indicate that the designs are associated with separate, unrelated sources. Especias' design uses brown and green colors for the text and a white background. Best Seasonings uses only white color for the text and a red background. Both designs feature a cook's hat. But the cook's hats in each are placed differently, have different shapes and different colors. The hat in the Especias' mark is brown, placed in the center of the mark (on top of the surname Montero), and has two types of leaves emerging from the right side. The cook's hat in the Best Seasonings' design is white, forms part of the capital letter E and has only one set of green leaves on the left side of the hat. Yet the most distinguishable feature of the designs is that the focus of the Especias mark is the word MONTERO, and the focus of the Best Seasonings mark are the two words ESPECIAS NATURALES. The words BY SOFRITO MONTERO appear under the words ESPECIAS NATURALES in a much smaller font. Viewed in the context of a marketplace, these designs create a distinct impression and, like the word marks at issue, are dissimilar. Boston Duck Tours, 531 F.3d at 29 (visual differences between designs "indicate that the designs are associated with separate, unrelated sources rather than the same one."). The marks ESPECIAS MONTERO DESDE 1959 and ESPECIAS NATURALES BY SOFRITO MONTERO, as well as their respective designs, are not sufficiently similar and this factor weighs against a finding of likelihood of confusion.

### 2. Similarity of the goods or services

Both parties are in the business of selling spices and seasonings. There is no dispute as to the similarity of the goods sold by the parties. This factor weighs in favor of finding a likelihood of confusion.

### 3. Relationship between channels of trade, advertising and prospective clients

These three factors "are often considered together because they tend to be interrelated." Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 19 (1st Cir. 2004) (citing Int'l Ass'n of Machinists, 103 F.3d at 204). Especias and Best Seasonings use similar channels of trade. Best Seasonings sells its products in supermarkets, pharmacies, restaurants, through its website, and to wholesalers. PSUF ¶¶ 6, 8. Especias distributes in supermarkets, independent grocers, wholesalers, and through an e-commerce platform called Brands of Puerto Rico. PSUF ¶¶ 4, 7. Both parties advertise their products on their own webpages, through various social media accounts and on retail points of sale. PSUF ¶¶ 8-10, 33, 41. And since both Especias and Best Seasonings are based in the southern part of Puerto Rico and have online presence, the Court concludes that their target client base is the same: people in Puerto Rico and online consumers. These three factors weigh in favor of finding a likelihood of confusion.

### 4. Evidence of actual confusion

Evidence of actual confusion is "often deemed the best evidence of possible future confusion". Boston Duck Tours, 531 F.3d at 25 (citations omitted). But if there is no evidence of actual confusion, and "the marks have been in the same market, side by side, for a substantial period of time, there is a strong presumption that there is little likelihood of confusion." Pignons, 657 F.2d at 490 (citations omitted). Isolated instances of actual confusion are not determinative in the analysis of likelihood of confusion. Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1109–10 (6th Cir.1991)(citing Sun Banks, Inc. v. Sun Fed. Savs. & Loan, 651 F.2d 311, 319 (5th Cir.1981)(nineteen reports over three years is insufficient); Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 263 (5th Cir. 1980) (three instances over fifteen years is insufficient); Armstrong Cork Co. v. World Carpets, Inc., 597 F.2d 496, 506 & n. 15 (5th Cir. 1979) (three instances is insufficient)). When the evidence of actual confusion consists of a handful of instances "after a significant time or a significant degree of concurrent sales under the respective marks" an inference of no likelihood of confusion is warranted. Id. (citing Amstar, 615 F.2d at 263).

Especias points to the following evidence of actual confusion: (1) messages received through Facebook and WhatsApp from alleged customers inquiring about products sold by Best Seasonings; (2) the testimony of Especias' President as to comments made by coworkers, salesmen and merchandisers regarding confusion among consumers and supermarket employees who

13

believe that Especias and Best Seasonings are the same company; (3) Pola Montero's testimony that the general perception in Ponce and in the southern part of Puerto Rico is that Especias and Best Seasonings are the same business; (4) the Walmart Ad featured a product sold by Especias while Montero Arroyo was talking to the camera; and (5) Best Seasonings' President's text message to a Walmart executive suggesting that the scenes where Especias' product is featured should be deleted from the Walmart Ad. PSUF ¶¶ 45-47, 53-54; Docket No. 72-14.

The messages received by Especias through social media do not have probative value as these are inadmissible hearsay. Hearsay consists of out of court statements offered to prove the truth of the matter. See Fed.R.Civ.P. 801(c). Especias has not named any of the persons who wrote the messages inquiring about products sold by Best Seasonings as witnesses in this case. If this case were to proceed to trial, Especias would not be able to present the content of such messages for the truth of the matter—to prove actual confusion. See e.g., Copy Cop, Inc. v. Task Printing, Inc., 908 F.Supp. 37, 41-42 (D. Mass.1995)(hearsay evidence of consumer questions to store employees indicating confusion not to be considered on summary judgment absent direct evidence from the employees who heard the questions); Dávila v. Corporación de Puerto Rico Para La Difusión Publica, 498 F.3d 9, 17 (1st Cir. 2007)("it is black-letter law that hearsay evidence cannot be considered on summary judgment"). Furthermore, the testimonies of Pedro Montero and Pola Montero regarding alleged discussion or communications by third parties concerning actual confusion, would not only amount to inadmissible hearsay, but only reference a handful of incidents during the—at least—ten (10) years that the products have been in the same market competing side by side. As discussed above, this is insufficient evidence to establish actual confusion in the market.

This leaves Especias with the Walmart Ad and the text message of Best Seasonings requesting that Walmart delete shots of the Especias' product. But this evidence in no way establishes confusion, much less actual confusion. That Especias' product may have been included in the shot of the video could be the result of an honest mistake, oversight or failure in the editing process. In no way does the Walmart Ad establish any confusion on the part of the customer base. Because Especias has not presented evidence of actual confusion and the marks have been in the same market since 2011, there is a strong presumption of no likelihood of confusion.

### 5. Defendant's intent in adopting the mark

"[T]he First Circuit established 'that courts should not give great weight to a finding of lack of intent in determining likelihood of confusion because the presence or absence of intent does not impact the perception of consumers whose potential confusion is at issue.'" Niagara Bottling, LLC, 381 F. Supp. 3d at 184 (citing I.P. Lund Trading v. Kohler Co., 163 F.3d 27, 49 (1st Cir. 1998)). General, conclusory allegations of "willfulness" are not enough to conclude that there has been bad faith. Pignons, 657 F.2d at 491 (no evidence of palming off, intent to deceive, or any effort to benefit from plaintiff's reputation); see also Goya Foods, Inc. v. Orion Distributors, Inc., 916 F. Supp. 2d 177, 184 (1st Cir. 2012)(purely legal maneuvers did not reflect an intent to deceive customers or otherwise benefit from plaintiff's brand).

Especias claims that Best Seasonings adopted a mark confusingly similar because Montero Arroyo has been litigating the ownership of his shares in Especias and has sought its dissolution in a litigation currently pending before the Puerto Rico Court of First Instance. Docket No. 83, p. 19; PSUF ¶¶ 18-21; ¶ 28. And because Especias refused several business propositions made by Best Seasonings. Id. The fact that the owners of the corporations litigating this case are family members with a history of legal feuds and unsuccessful business ventures does not in any way tend to demonstrate that Best Seasonings acted with intention to deceive customers or to benefit from Especias' mark. Especias has not even argued, much less produced evidence, that there is a link between Best Seasonings' purported bad faith and customer perception. This factor weighs against a finding of likelihood of confusion.

### 6. Strength of the mark and design

Trademark strength can be assessed by weighing both its conceptual and commercial strength. 2McCarthy §11:80. Conceptual strength refers "to the mark's placement on the spectrum of distinctiveness." Boston Duck Tours, 531 F.3d at 16 (n. 14), 17 (conceptual strength of the overall mark and its components is relevant in a composite mark that contains a generic phrase). The spectrum of distinctiveness of marks based on their capacity to serve as source-identifying goods is: (1) generic (least distinctive), (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful (most distinctive). Two Pesos, Inc. v Taco Cabana, Inc., 505 U.S. 763, 768 (1992).

Commercial strength "evaluates the actual customer recognition value of the mark at the time registration is sought or at the time the mark is asserted in litigation to prevent another's use." 2McCarthy §11:73. The commercial strength is a key element to determine if the allegedly

infringing mark is likely to cause confusion. 2McCarthy §11:81. Factors such as "the length of time a mark has been used and the relative renown in its field; the strength of the mark in plaintiff's field of business; and the plaintiff's action in promoting the mark" are considered when evaluating commercial strength of a mark. Boston Duck Tours, 531 F.3d at 16 n. 14 (quoting Equine Techs. Inc. v. Equitechnology, Inc., 68 F.3d 542, 547 (1st Cir. 1995)). "Determining the strength of any mark requires weighing circumstantial evidence of advertising, promotion, recognition and any direct evidence of consumer perception, such as by a survey." 2McCarthy §11:81. The following evidence is commonly used to prove a mark's strength: "amount of third party use; amount and type of advertising and promotion which draws attention to the mark; amount of sales and number and type of customers; survey of likely customers showing their recognition of the mark." Id. And while evidence of advertising is relevant to prove strength, that alone may not be sufficient; "the trademark owner should put its sales and advertising figures in perspective by comparing them to the sales and advertising figures for similar products to show that [a] mark is relatively strong in its category." Id.

Especias claims ESPECIAS MONTERO DESDE 1959 is strong because it is registered in the USPTO. Especias cites 15 U.S.C. §1115(a) which provides that registration is *prima facie* evidence of the validity of the registered mark, of the registration of the mark, the ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. Especias also cites case law which support the contention that a registered mark enjoys the rebuttable presumption of being inherently distinctive. However, the analysis here is not whether the mark is valid or whether Especias has the exclusive right to use the mark, or whether it is presumed inherently distinctive; it is whether the mark is *strong*. That Especias' mark is registered in the USPTO is not indicative of strength; "registration is not sufficient to make a mark 'strong'". Nat'l Info. Corp. v. Kiplinger Wash. Editors, Inc., 771 F. Supp. 460, 463 (D.D.C. 1991). Especias further claims that its mark is strong because it has been using the name ESPECIAS MONTERO since the company was founded in 1959, and, in 2017, it launched an aggressive marketing campaign for the mark. Docket No. 83, pp. 19-20. But these are arguments, not evidence of conceptual or commercial strength.

ESPECIAS MONTERO DESDE 1959 is a composite mark comprised of at least two weak terms (ESPECIAS and MONTERO), and there is no secondary meaning that would "overcome the mark's initial weakness" of being generic. Boston Duck Tours, 531 F.3d at 23 (citing

2McCarthy §11:80). The word mark is not distinctive; it is not conceptually strong. Neither is the design conceptually strong. Especias has proffered no evidence to demonstrate that its design (specifically, the leaves, the chef's hat, or any of the elements in the design) is distinctive and creates a separate commercial impression in the buyer's mind. There is no evidence that the word mark ESPECIAS MONTERO DESDE 1959 or its design lead potential customers to identify the source of the product; these are at the lowest spectrum of distinctiveness.

As to commercial strength, it is uncontested that the term ESPECIAS MONTERO has been used for a long time; since 1959, and that Especias launched its new design in 2017. However, Especias has not submitted any evidence to establish the strength of the mark in plaintiff's field of business. While Especias alleges that it began an aggressive marketing campaign after the rebranding in 2017, Especias failed to present evidence of advertising and promotion efforts, number of sales and number and type of customers, or customers surveys demonstrating recognition of the mark to support a finding of commercial strength. Neither has Especias presented any evidence of its sale numbers and advertising efforts in comparison to those of similar products. There is just no evidence on the record to establish the strength of the mark and design at issue. The strength factor also weighs against a finding of likelihood of confusion.

Having examined the undisputed facts using the Pignons factors as a guide, and drawing all inferences in favor of Especias, the Court finds that there is no triable issue of fact on likelihood of confusion. A review of the case law regarding composite, generic, and non-distinctive marks leads the Court to conclude that the words and designs of ESPECIAS MONTERO DESDE 1959 and ESPECIAS NATURALES BY SOFRITO MONTERO are substantially dissimilar in sight, sound and meaning, and "any similarity is a result of each party's decision" in using generic words or images to describe its product. Boston Duck Tours, 531 F.3d at 26. Especias has not presented any admissible evidence of actual confusion; there is no evidence of bad faith on Best Seasonings' part; and Especias has not presented a triable dispute as to the strength (or lack thereof) of the ESPECIAS MONTERO DESDE 1959 word mark or design. The fact that the goods or services are similar and relationship between channels or trade, advertising and prospective clients favor a finding of likelihood of confusion is insufficient as a matter of law to prevail on a claim for trademark infringement under the Lanham Act. See e.g., Boston Duck Tours, 531 F.3d at 26. Simply, the evidence on record does not support the conclusion that Best Seasonings' use of the mark ESPECIAS NATURALES BY SOFRITO MONSTERO in its products causes a likelihood

of confusion among consumers. Especias thus fails to demonstrate a plausible claim for relief for trademark infringement under the Lanham Act.

**B.      Trademark Infringement Claim under the Puerto Rico Trademark Act**

Especias claims that Best Seasonings' use of confusingly similar marks constitutes trademark infringement under Puerto Rico's Trademark Act, 10 L.P.R.A. §§ 223-224b. This statute "is congruous with the common law principles developed by the federal courts." Erva Pharms., Inc. v. Am. Cyanamid Co., 755 F. Supp. 36, 39 (D.P.R. 1991)(citing Rand, Ltd. v. Lazoff Bros., Inc., 537 F.Supp. 587 (D.P.R.1982)). Therefore, an essential element of trademark infringement claims under the Puerto Rico Trademark Act, as under the Lanham Act, is likelihood of confusion. Davidoff Extension S.A. v. Davidoff Comercio E Industria Ltda., 747 F. Supp. 122, 126 (D.P.R. 1990)(citing Cooperativa Cafeteros v. Colón Colón, 91 D.P.R. 372, 380-389 (1964); Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 372 (1st Cir.1980)). The Court's conclusion that there is no triable issue of fact as to the likelihood of confusion between the two marks at issue also defeats Especias' infringement claim under the Puerto Rico Trademark Act.

### IV.      Conclusion

After thoroughly evaluating the Pignons factors, the Court finds that there is no triable issue of fact preventing the entry of summary judgment and finding that there is no likelihood of confusion between the word marks and designs of ESPECIAS MONTERO DESDE 1959 and ESPECIAS NATURALES BY SOFRITO MONTERO. Best Seasonings' Motion for Summary Judgment is **GRANTED,** and Especias' complaint will be dismissed with prejudice. Best Seasonings' counterclaim is now moot. Judgment to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of September 2022.

> s/Giselle López-Soler
> GISELLE LÓPEZ-SOLER
> United States Magistrate Judge